## Staunton

COMMONWEALTH OF VIRGINIA, EX REL., C. F. JOYNER, JR.,
COMMISSIONER OF THE DIVISION OF MOTOR VEHICLES V.
JAMES EDWARD WILLIS.

September 10, 1952.

Record No. 3994.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General,* and *D. Gardiner Tyler, Jr., Assistant Attorney General,* for the appellant.

*Walter H. Scott,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This appeal is from an order of the Hustings court reversing and declaring null and void an order of the Commissioner suspending the operator's license of the appellee for two months.

This is the second appeal in the case. The first was taken by Willis from an order of the court affirming the action of the Commissioner. *Willis* v. *Commonwealth,* 190 Va. 294, 56 S. E. (2d) 222. The order of the court was there reversed for insuf-

ficiency of the notice required by section 18 of the Safety Responsibility Act (Acts 1944, ch. 384, p. 587, amended by Acts 1948, ch. 469, pp. 939, 940, and now section 46-420, Code of 1950), and because of the admission in evidence of certain accident reports. We remanded the case for such further proceedings, if any, as the Commonwealth might be advised.

On May 3, 1950, after the remand, the Commissioner tendered and asked to file a supplemental answer to the original petition of appellee. This instrument sought to amend the Commissioner's original answer by striking therefrom copies of the accident reports, and to make specific charges against Willis so as to supply that defect in the original notice. The three charges specified were these:

1. A serious violation of the motor vehicle laws in overtaking and passing other vehicles near the crest of a grade on Route 11, in Pulaski county, for which he was convicted of reckless driving by the trial justice of Pulaski county on March 14, 1947;

2. A serious violation of the motor vehicle laws on Chapman avenue near 12th street, in Roanoke, on April 2, 1948, for which he was convicted of reckless driving in the police court of Roanoke on April 9, 1948;

3. Reckless and unlawful operation of a motor vehicle at the time and place next above mentioned, thereby causing or contributing to an accident resulting in serious property damage.

These acts were alleged to warrant confirmation of the action of the Commissioner, under section 46-420 of the Code, section 18 of the 1944 act as amended. That section provides, in pertinent part, that the Commissioner may, after due hearing, upon giving the required notice, suspend or revoke the operator's license for not more than one year, whenever it is satisfactorily proved at the hearing that the licensee:

"(1) Has, by reckless or unlawful operation of a motor vehicle, caused or contributed to an accident resulting in death or injury to any other person or in serious property damage,

\* \* \*

"(5) Has committed a serious violation of the motor vehicle laws of this State."

By decree of April 27, 1951, the court refused to allow this answer to be filed on the ground that "the time allowed for the filing of an answer has expired," but permitted the case to proceed for such further proceedings as the Commissioner might be

advised, not inconsistent with the opinion on the first appeal. The case came on for hearing on September 28, 1951, when counsel agreed that the evidence might be admitted and ruled on later, so the record would be complete.

The Commissioner then introduced evidence in reference to the incident of March 14, 1947, in Pulaski county, resulting in the conviction there for reckless driving, and in reference to the incident of April 2, 1948, in Roanoke, resulting in the conviction there for reckless driving on April 9, 1948, together with the testimony of Willis given before the hearing officer on January 21, 1948, and on July 27, 1948.

The evidence with respect to the March 14, 1947, incident was to the effect that at about eight-thirty that morning Willis, driving a truck westwardly, passed a car driven by a deputy sheriff of Pulaski county and a tractor-trailer immediately in front of it, also going west, on a hill on Route 11 about a mile and a half west of Radford, crossing solid double white lines in the middle of the road in doing so. The deputy sheriff said the spot was approximately 150 yards west of a point where a road intersected Route 11 on its south side, and identified the place by marking on a photograph which showed the road and the double lines. The deputy sheriff overtook appellee and gave him a summons to appear before the trial justice of Pulaski county. He there entered a plea of guilty and was fined $10.

In his testimony before the hearing officer in January, 1948, appellee admitted the conviction and stated that he told the trial justice he crossed the double lines. He explained that he "was going up this incline;" that the weather was bad; that the car in front of him was going about 15 miles an hour and that he passed it going about 20 miles an hour with the truck in second gear. In his testimony before the hearing officer on July 27, 1948, he testified that it was a rainy night [sic] and the road was muddy; "I was going up this long hill and a car was barely moving in front of me and I had to change gears to go around the fellow. I passed him on a long hill and didn't notice the double lines."

It appears that no action was taken by the Commissioner after the hearing on January 21, 1948, except the writing of a warning letter, stating that if the defendant was convicted of any further violation there would be a further hearing. The sub-

sequent hearing on July 27 was because of the accident of April 2 followed by his conviction for reckless driving on April 9.

The evidence with respect to the accident of April 2, 1948, was that Willis, driving east on Chapman avenue, in Roanoke, at 12:30 a. m., collided in an intersection with a car being driven north on 12th street, as a result of which Willis was fined $10 for reckless driving. The officer testified that both drivers had had a drink. On cross-examination, however, the same officer testified that he reported at that time to the traffic bureau of the city and to the State that the defendant was guilty of no violation and that Brown, the driver of the other car, was guilty of not yielding the right of way.

Brown testified as a witness for the Commonwealth that the damage to his car was $230.30, of which he paid $100 under a deductible insurance policy and the insurance company paid the balance. Neither he nor the insurance company, which was also the company in which Willis carried insurance, called on Willis to pay any part of the damage, and Brown later offered to pay half of Willis' $10 fine.

Willis testified that the Brown car struck him when he was two-thirds through the intersection. He denied that he was drinking and asserted that he did not drink at all, but that Brown was drinking. Brown admitted he had had "a couple of beers" about an hour before the accident. Willis testified that he fixed his own car and the damage to it was about $10.

The testimony on behalf of Willis was given by himself, four police officers of Roanoke and two other witnesses, the last six testifying in regard to his qualifications and record as a driver.

Willis testified that in his employment by American News Company he drove every day, and since 1943 he had driven his truck over Route 11 in Pulaski county twice a day three times a week; that the place where he passed the deputy sheriff was not at the point testified to by the latter, but "way this side," meaning to the east, of the area of the road shown in the photograph on which the deputy marked the point; that the car in front of him was moving about 15 miles an hour and he thought it might be a motorist having trouble; that he put his truck in second gear and proceeded around him; that at that time he could see down the highway to the top of the hill and no other vehicle was coming; that there was no vehicle in front of the deputy sheriff when he passed; that it was a rainy morning, there was dirt on

the road and that he did not pay attention to whether there was a double line or not; that he "could see straight enough and far enough."

There was evidence for the Commonwealth that the double lines are placed in a road to prevent passing where the sight distance becomes less than 800 feet between points 4½ feet above the road surface, and assuming the speed of meeting vehicles to be 50 miles an hour, this calculation allows a margin of safety of 300 feet. If the passing occurred at the point designated by the deputy sheriff, the sight distance ahead was about 500 feet. The double lines in the road extended back eastwardly a considerable distance from that point and the road was straight for practically half a mile.

The Commonwealth on this appeal contends, first, that the trial court erred in refusing to permit the so-called supplemental answer to be filed.

This proceeding began with the notice quoted in the former opinion, 190 Va. at p. 297, 56 S. E. (2d) at p. 223, reciting a conviction for reckless driving on March 14, 1947, "in the Civil & Police Court, Roanoke, Virginia," and involvement in accidents on July 25, 1946, August 14, 1947, and April 2, 1948. We held this notice to be insufficient, as stated, because it did not set out the specific acts or conduct relied on. For this and for the admission in evidence of certain accident reports, the order of suspension was reversed and the case remanded for further proceedings, if the Commonwealth was so advised, consistent with that opinion.

Prior to the first appeal, by an order entered February 14, 1949, the Commissioner was allowed to file a supplemental answer alleging Willis' conviction of reckless driving on March 14, 1947, in the trial justice court of Pulaski county, and filing an abstract thereof. This was the charge of crossing the double lines in passing, and was obviously the conviction referred to in the notice but erroneously stated to have been in Roanoke. That supplemental answer was said on the first appeal to have amended the notice. 190 Va., footnote at p. 302, 56 S. E. (2d) at p. 226. There was never any evidence of a conviction on March 14, 1947, in Roanoke. The evidence on the first hearing, held January 21, 1948, which resulted in the warning letter, dealt only with the Pulaski charge. Likewise the "re-hearing" of July 27, 1948, occasioned by the intersection accident in Roan-

oke on April 2, 1948, dealt with the Pulaski conviction of March 14, 1947, and the Roanoke conviction of April 9, 1948. There was never any question about what incidents were being investigated, and those were the two convictions on which the suspension order was based.

There is also no question that up to the time of the filing of the second supplemental answer the Commissioner was relying on section 19 of the 1944 act, now section 46-423 of the Code, giving him authority on the grounds stated therein to suspend both the operator's license and the registration certificates and plates for a maximum period of five years. That much, if no more, was clear from the proceedings and it was so stated in the former opinion, 190 Va. at p. 298, 56 S. E. (2d) at p. 224, in which we said that the test under that section is whether the revocation or suspension is necessary for the safety of others on the highway, which is to be determined on the basis of the past conduct of the defendant.

No fault is to be found with the ruling of the trial court that the evidence on the hearing now under review did not establish that necessity.

However, the second supplemental answer should have been allowed to be filed. It set up no new charges against Willis, but dealt with the same charges as were before the hearing officer. Its effect in that regard was to amend the notice to meet the holding on the former appeal with reference to specifications. It also abandoned reliance on section 19, Code 46-423, as authority for the suspension and gave notice that the provisions of § 46-420, section 18 of the act, would be relied on to support the order of the Commissioner.

The order of the Commissioner, dated August 12, 1948, recited that upon the evidence taken at the two hearings "pursuant to Section(s) 18 and 19 of Chapter 384, Acts of 1944, to determine whether or not the operating and registration privileges of James Edward Willis should be revoked or suspended, and upon the records of the Division of Motor Vehicles," the Commissioner was of opinion "that it is necessary for the safety of the public on the highways of the State" that Willis' operator's license should be suspended for two months. On the first appeal we held, as stated, that the court should not have considered the accident reports. The Commissioner evidently then concluded that the suspension could not be sustained under

section 19. By this second supplemental answer he asked that the suspension be sustained under the less drastic provisions of section 18.

We hold that he had that right and that the supplemental answer should have been allowed to be filed as an amendment of the notice. As stated, it particularized the charges heard by the hearing officer and relied on them as warranting the Commissioner's order under the milder of the two statutes which the Commissioner had invoked.

Although it was sought in the court below to complete the record so that a final judgment might be entered here, unfortunately the issues are not presented so that may be done.

As noted, the supplemental answer charged that Willis committed serious violations of the law on two occasions, for which his operator's license should be suspended as authorized by section 46-420. Those are factual questions and the evidence is in conflict.

█ It is not to be doubted that driving across solid double lines in overtaking and passing a vehicle is a violation of the law, Code § 46-222(6). But section 46-420 does not authorize the suspension of the operator's license for every violation of the motor vehicle laws. It authorizes that action only for a serious violation, recognizing that there may be different degrees of guilt in violating different sections of the law or even in different violations of the same section.

. If a driver has been able to observe the road sufficiently far ahead to be entirely sure that no vehicle is approaching that could render his passing unsafe, his crossing of the double lines, while a violation of the law, may not be a serious violation such as contemplated by section 46-420. But if conditions are not such that he can be entirely sure of that fact, his violation is necessarily serious, because in that event he is taking a chance of injury or death to himself, to those he meets and to those he is passing. As was said in *Commonwealth* v. *Butler,* 191 Va. 193, 201, 61 S. E. (2d) 12, 16, the fact that no tragedy resulted from the act does not lessen the gravity of the offense.

█ Proof that a driver did, in overtaking and passing a vehicle, cross the double lines, is sufficient to make a *prima facie* case and meet the burden placed on the Commonwealth by section 46-420 as construed in the first *Willis Case,* 190 Va. at p.

299, 56 S. E. (2d) at p. 224. The burden then shifts to the defendant to show how he could be entirely sure of the saving fact.
■ Whether the passing in this case occurred where the deputy sheriff testified it did, or where Willis claimed it did, and whether such passing, under the conditions then existing, was a serious violation of the law, are questions of fact, which have to be determined from conflicting evidence and which ought to be first decided by the trial court which sees and hears the witnesses. The same kind of situation exists with respect to the intersection accident in Roanoke.

The trial court did not pass on these controlling questions. It was misled by language in the opinion on the first appeal which was applicable only to proceedings under section 19 (Code § 46-423), and by its order held that the Commissioner had not carried the burden of proving ''that the suspension of Willis' permit is necessary for the safety of the public on the highways of this State.'' The issue under the supplemental answer was whether the evidence was sufficient to warrant a suspension of the appellee's operator's license under section 18 of the act (Code § 46-420), and if so, for what period. *Commonwealth* v. *Butler,* 191 Va. 193, 200, 61 S. E. (2d) 12, 15.[1] We decided that issue in that case because the controlling evidence was not in conflict.

■■ The Commonwealth also contends that it was error to admit and consider evidence of the driving record of the defendant subsequent to the date of the Commissioner's order. That contention, we think, is correct. A defendant cannot shield himself from the consequences of a serious violation of the law merely by his subsequent good behavior. Evidence of his record prior to the date of the Commissioner's order is admissible if it has any bearing on the issue or issues being tried.

The order of the trial court is, therefore, reversed and the case remanded for further proceedings, if the Commonwealth be so advised, to be had in accord with this opinion.

*Reversed and remanded.*

---

[1] See Acts 1952, ch. 544, p. 850, amending section 46-424 of the Code dealing with appeals from orders of the Commissioner and prescribing the authority of the trial court, as well as amending other sections and adding new sections.